# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| EPIC TECH, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SPINX GAMES LIMITED,<br><br>    Defendant. | Civil Action No. 1:22-cv-02043-SCJ |

## REPLY IN SUPPORT OF DEFENDANT SPINX GAMES LIMITED'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

I.      INTRODUCTION

Epic Tech's opposition to SpinX's motion to dismiss confirms why dismissal here is warranted.[1] Epic Tech concedes that its federal registration for CA$H BASH covers *physical* gaming equipment, and Plaintiff's rights to CA$H BASH on gaming software stem from its common law trademark rights. *See* Opp. [Dkt. 30] at 3, 17. Epic Tech further concedes that it has not used CA$H BASH on gaming software and does not compete with SpinX in the market for mobile games; instead, it alleges that a subsidiary, Big Frog, "began development" of a Ca$h Bash game 14 months ago. *Id.* at 4. It is on these allegations—a claim to rights in an unregistered mark on unreleased software allegedly under development by a third-party—that Epic Tech rests its claims. Those claims are without merit.

***First***, Epic Tech's claim for false association under the Lanham Act fails because its First Amended Complaint cannot show it suffered a cognizable injury protected under 15 U.S.C. § 1125(a), or that SpinX's conduct proximately caused such an injury. Instead, Epic Tech runs from the standard, arguing that it need only allege "a plausible claim of likelihood of confusion." Opp. at 17. But Epic Tech

---

[1] Capitalized terms as used herein have the same meanings as in the Memorandum of Law In Support of Defendant SpinX Games Limited's Motion to Dismiss Plaintiff's First Amended Complaint. *See* Motion to Dismiss Brief ("MTD Br.") [Dkt. 29-1].

1

#3507223v2

cites no caselaw in support of its contention. In any event, Epic Tech fails to make any showing that it has alleged likelihood of confusion under any of the factors the Eleventh Circuit evaluates in determining likelihood of confusion between two registered marks. *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d. 1379, 1382 (11th Cir. 1997). To state a claim for false association—which is distinct from a claim of trademark infringement—the pleading standard is different: Epic Tech must plead "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). It has not done so.

**Second**, Plaintiff suggests that the Court cannot dismiss its defective trademark dilution claim without improperly holding it to a "summary judgment standard." Opp. at 23. Not so. In order to state a claim for trademark dilution, Plaintiff must plead facts showing that its CA$H BASH mark is famous—*i.e.*, "widely recognized by the **general consuming public** of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A) (emphasis added). Courts analyzing whether a mark is famous consider four factors, *see id.* at § 1125(c)(2)(A)(i)-(iv), which Plaintiff's opposition largely ignores. Instead, Plaintiff rests on its conclusory, self-serving assertion that

the mark is famous and well-known by those *in the industry*. Opp. at 24. But "whether a mark is 'famous' is a legal conclusion and therefore, on a motion to dismiss, the court does not simply accept Plaintiff's recitation of that element [o]f its dilution case." *Brookwood Funding, LLC v. Avant Credit Corp., Inc.*, 2015 WL 11504556, at *4 (N.D. Ga. July 28, 2015) (Jones, J.). Here, Plaintiff has pleaded nothing more than a legal conclusion, and its dilution claim fails.

For these reasons and as explained further below, the Court should dismiss Plaintiff's claims with prejudice.

## II.   ARGUMENT

### A.   Epic Tech fails to state a claim for false association.

#### 1.   *Lexmark*'s zone of interests test applies here.

Epic Tech argues that *Lexmark*'s zone of interests test does not apply to its false association claim, but ignores the "unitary purpose" behind the Lanham Act, which the Eleventh Circuit has held guides both false association and false advertising claims. *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.,* 797 F.3d 1248, 1275 (11th Cir. 2015). Under any statute, Epic Tech's claim must "fall within the zone of interests [the law] regulates or protects." *Kurapati v. U.S. Bureau of Citizenship & Immigration Servs.*, 775 F.3d 1255, 1261 (11th Cir. 2014). And to determine whether the claim falls within the statute's zone of interests, courts look

3

to the statute's purpose. *Lexmark*, 572 U.S. at 130.

The Supreme Court was clear in *Lexmark* that Section 43(a) of the Lanham Act was designed "***to protect persons engaged in such commerce against unfair competition***," which is "concerned with ***injuries to business reputation and present and future sales***." *Lexmark,* 572 U.S. at 131 (emphasis added). Accordingly, the Supreme Court held that to state a claim for false advertising, a plaintiff must plead "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 140. And multiple courts have applied that requirement to claims for false association. MTD Br. at 7–8. Epic Tech's attempt to distinguish these cases misses the mark, as courts across the country, including district courts within the Eleventh Circuit, have applied *Lexmark*'s "zone of interests" test to false association claims. *See, e.g., Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 151 F.Supp.3d 1268, 1279 (M.D. Fla. 2015); *Kroma Makeup EU, Ltd. v. Boldface Licensing + Branding, Inc.*, 2015 WL 1708757, at \*6 (M.D. Fla. Apr. 15, 2015); *Millennium Access Control Tech., Inc. v. On the Gate, LLC*, 2017 WL 10445800, at \*13 (E.D.N.Y. Feb. 14, 2017); *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 711 (4th Cir. 2016). Instead, it is Epic Tech that relies on out-of-circuit decisions from over 30 years ago, which *Lexmark* "abrogated," to support its conclusion that *Lexmark*

4

should not apply to false association claims. Opp. at 13 (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992)).

But instead of making any meaningful attempt to show it has pleaded injury in competition—*i.e.*, injury to a commercial interest in sales or business reputation that was caused by SpinX—Epic Tech argues that it need only plead likelihood of confusion, citing no caselaw in support. Opp. at 17. But likelihood of confusion is required where a plaintiff alleges infringement of a ***registered*** mark; here, Epic Tech's false association claim is premised on its alleged ***common law*** rights in CA$H BASH on gaming software. Opp. at 17. And Epic Tech's opposition merely assumes that it has pleaded likelihood of confusion for CA$H BASH on software, when it has not. Nowhere does Epic Tech address the seven factors that the Eleventh Circuit evaluates in determining likelihood of confusion between two *registered* marks: "(1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent, and (7) actual confusion." *Lone Star*, 122 F.3d. at 1382. Thus, even if pleading likelihood of confusion was all that is required—which it is not—Epic Tech has not pleaded it. Nor has Epic Tech pleaded facts showing it meets the "zone of interests" test or

#3507223v2

proximate cause requirement articulated in *Lexmark*, which should be applied here. *Lexmark*, 572 U.S. at 134.

### 2. Epic Tech fails to plead an injury to its sales or reputation.

Epic Tech argues that because trademark law protects consumers, "any consumer confusion is an injury [under Section 1125(a)(1)(A)]." Opp. at 16, *see also id.* at 18–19. Not so. At least one court has explicitly rejected that exact argument, dismissing a "conclusory allegation that defendants' alleged use of the marks 'created confusion in the market place'. . . [as] insufficient to state a plausible claim for relief under Section 1125(a)(1)(A)." *Millennium Access Control Tech., Inc.*, 2017 WL 10445800, at *13. Instead, to plead an injury to a commercial interest in sales or reputation, Epic Tech must either (1) plead that it "competes directly with a defendant," or (2) plead some facts showing that it lost sales or suffered a harm to its reputation. *ThermoLife Int'l, LLC v. BPI Sports, LLC*, 2022 WL 612669, at *2 (9th Cir. Mar. 2, 2022). Epic Tech does neither.

***First***, Epic Tech has not pleaded that it competes with SpinX—nor can it. The First Amended Complaint alleges that Epic Tech designs gambling products and casino games that are used in brick-and-mortar locations. FAC ¶ 8. Epic Tech further alleges that SpinX offers mobile apps and games for use on smartphones. FAC ¶¶ 32–33. Nowhere does Epic Tech allege that it directly competes with

SpinX. These facts are evident from the face of the First Amended Complaint; they do not require the Court to make a "premature factual finding," as Epic Tech complains. Opp. at 18. Moreover, Epic Tech cannot amend or supplement its complaint through its opposition brief. *Leathers v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 12121324, at *4 n.7 (N.D. Ga. Aug. 28, 2013) ("[B]ecause it was not included in Plaintiff's complaint or amended complaint, the Court does not consider this argument.") (Jones, J.). And the facts in Epic Tech's amended complaint are clear that its registered trademark covers gaming **hardware.** And even assuming Epic Tech has common law rights in CA$H BASH on gaming software, it still has not pleaded the parties compete. The First Amended Complaint alleges that SpinX offers a play-for-fun mobile app—not casino games for real money—whereas Epic Tech operates brick-and-mortar "gambling games, social casino games, and other [undefined] gaming entertainment." Opp. at 18; *Cf ThermoLife*, 2022 WL 612669, at *2 (holding the parties were not direct competitors where plaintiff "operate[d] at a different level" within the same broad market).

      Epic Tech's arguments to the contrary are unavailing. Epic Tech contends that its use of CA$H BASH on physical gaming equipment is comparable to Amazon's use of KINDLE on physical e-readers and that a junior user's use of

KINDLE on software would necessarily compete with physical e-readers. Opp. at 18. That specious logic does nothing to remedy Epic Tech's pleading deficiencies. Equally meritless is Epic Tech's claim that "every sale made to SpinX was [a sale] diverted from Epic Tech." Opp. at 19. Epic Tech does not provide any factual support for how SpinX's free-to-play mobile app possibly diverts sales from Epic Tech's operation of brick-and-mortal games in which players 'wager' real money.

Without being able to show more, Epic Tech circles back to its claims over common law rights in CA$H BASH for software and that some amorphous market of consumers may be confused. But, as stated above, this is no different from *Millennium Access Control Tech*, where the court rejected the plaintiff's arguments because "the complaint [was] devoid of any factual allegations," and as such its "conclusory allegations that defendants' alleged use of the marks created confusion in the marketplace . . . [was] insufficient to state a plausible claim for relief under Section 1125(a)(1)(A)." *Millennium*, 2017 WL 10445800, at *13 (internal quotation and citations omitted).

***Second***, Epic Tech argues it is harmed because it "has a wholly-owned subsidiary, Big Frog, LLC" "which produces mobile play-for-fun social casino games." *See* FAC ¶ 24, Opp. at 18. Yet, federal caselaw emphatically rejects Epic Tech's attempt to claim its subsidiary's conduct as its own—potential competition

8

between a defendant and a "subsidiary does not confer standing on a parent corporation." *See AAVN, Inc. v. WestPoint Home, Inc.*, 2019 WL 1168102, at *3 (N.D. Ill. Mar 13, 2019); *Tullett Prebon, PLC v. BGC Partners, Inc.*, 2010 WL 2545178, at *4 (D.N.J. June 18, 2010), *aff'd*, 427 F. App'x 236 (3d Cir. 2011).

And even though Epic Tech alleges that it licenses *other* marks to Big Frog, nowhere does it allege that it has licensed the CA$H BASH mark to Big Frog, which is the only mark relevant here. Nor does Epic Tech make any attempt to show how *Epic Tech* lost sales through any licensing agreement with Big Frog. As stated in SpinX's opening brief, Epic Tech "did 'not allege[] that its licensing arrangement causes it to lose fees proportionally to those products' lost sales, similar to the 1:1 relationship between microchips and ink cartridges in *Lexmark*.'" MTD Br. at 14 (*quoting ThermoLife*, 2022 WL 612669, at *2; *citing* FAC ¶¶ 24–27). Accordingly, the fact that Epic Tech's *subsidiary* allegedly competes with SpinX, and its blanket reference to a licensing agreement with its subsidiary covering other marks not asserted here, fails to support a plausible inference that Epic Tech suffered any harm.

In a last-ditch attempt to find some theory of harm, Epic Tech argues that it pleaded "reverse confusion." Opp. at 20. It did not. The Eleventh Circuit has held that, in a reverse confusion case, the plaintiff "***does not argue that the defendant is***

9

***using the mark to profit off plaintiff's goodwill***."; that would be what the court calls "forward-confusion." *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 121 (11th Cir. 2022) (emphasis added). Instead, in a reverse confusion case, "the plaintiff brings suit because of the fear that consumers are associating the plaintiff's mark with the defendant's corporate identity." *Id.* But here, Epic Tech alleges in conclusory fashion only that SpinX attempted to "trade upon the goodwill of Epic Tech's Ca$h Bash Mark." FAC ¶ 93. Tellingly, Epic Tech fails to cite to a single allegation in the First Amended Complaint that pleads reverse confusion, let alone any facts necessary to support this newly-manufactured theory of harm.

### 3. Epic Tech cannot show SpinX proximately caused harm.

The proximate cause requirement is a separate and independent requirement that a plaintiff alleging false association must show economic or reputational injury "flowing directly" from the defendant's conduct, which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133, 139; *see also Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc*, 707 F. App'x 576, 581 (2017). "[P]roximate causation may be adequately alleged when there is likely to be something very close to a 1:1 relationship between a plaintiff's lost sales and the sales diverted to a defendant." *ThermoLife,* 2022 WL 612669, at

*2. Though there is a presumption of proximate causation where the plaintiff pleads that the parties are direct competitors, *see id.*, Epic Tech has not so pleaded. Accordingly, Epic Tech must plead facts which make it plausible that SpinX's conduct resulted in a diversion of sales or caused consumers to withhold trade from Epic Tech. Here, Epic Tech's amended complaint does not even attempt to plead any facts which establish "something very close to a 1:1 relationship between" its lost sales and any sales diverted to SpinX or that SpinX's use of its mark caused consumers to otherwise withhold trade from Plaintiff. *Id*. Nor does the baseless assertion in its opposition brief that "every sale made to SpinX was [a sale] diverted from Epic Tech" remedy Epic Tech's defective pleading. Opp. at 19.

Understanding that it cannot meet this test, Epic Tech argues it has pleaded proximate cause simply because it has alleged "priority [of use] by the plaintiff and continued use by the defendant, appearing to have been utilized with the intent to cause confusion." Opp. at 21. That is insufficient, and the cases Epic Tech cites to confirm it must allege a diversion of sales or that consumers withheld trade from it.

For example, in *Kroma Makeup EU, Ltd. v. Boldface Licensing + Branding, Inc.*, the court found that the plaintiff "easily satisfie[d] the proximate cause prong," because its case was "[s]trikingly similar to the hypothetical posed by the Supreme Court in *Lexmark*." 2015 WL 1708757, at *6. In *Kroma Makeup*, the

plaintiff alleged that the parties were direct competitors, and thus "ha[d] suffered concrete and particularized injuries in the form of lost revenue, lost business, and association with an inferior-quality product." *Id.* at *6; *see also Spiral Direct,* 151 F. Supp. 3d at 1279 (competing clothing manufacturer alleging false association claim fell within the zone of interests of § 1125(a)(1)(A)). Here, Epic Tech pleads nothing like the facts alleged in *Kroma*; instead, its complaint is riddled with legal conclusions and fails to provide any factual support that SpinX caused Epic Tech to lose revenue, business, or suffer any other reputational harm.

Last, Epic Tech relies on two cases holding that a mark need not be used in commerce before a false association claim may be asserted, arguing that Epic Tech need not have made any mobile sales to satisfy the Lanham Act's proximate-cause requirement. Opp. at 22. This argument is a red herring. The caselaw is clear that because Epic Tech does not offer a mobile app and therefore does not compete with SpinX, it is not entitled to the ***presumption*** that SpinX's conduct caused Epic Tech harm. MTD Br. at 13. And nothing in Epic Tech's amended complaint otherwise establishes proximate causation. In any event, Epic Tech's cited cases are entirely inapplicable to this Court's inquiry because they involved questions of whether foreign plaintiffs can sue U.S-based defendants, an issue that is not present here. *See* Opp. at 22. Accordingly, the Court should dismiss its false

12

association claim with prejudice.

### B.  Epic Tech fails to state a trademark dilution claim.

In order to state a claim for trademark dilution, Epic Tech must plausibly allege that its mark is famous. *See Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1372 (Fed. Cir. 2012). Epic Tech does not dispute that it fails to plead facts under the Trademark Dilution Revision Act's (TDRA) four-factor test for determining whether a mark is famous, save for that its mark is registered. *See* 15 U.S.C. § 1125(c)(2)(A)(i)–(iv). Nor does Epic Tech dispute that it provides no facts from which the Court may infer that its mark is widely known by the general consuming public. And Epic Tech does not distinguish the facts here from those in the cases cited in SpinX's opening brief—including cases from this Court which granted 12(b)(6) motions for failure to adequately plead fame. *See Brookwood Funding*, 2015 WL 11504556, at *2–3; *Kason Indus., Inc. v. Allpoints Foodservice Parts & Supplies, LLC*, 2018 WL 1980370, at *3 (N.D. Ga. Mar. 6, 2018).

Instead, Epic Tech argues that SpinX is holding it to a summary judgment standard and that it does not need to plead any facts to support its assertion that its mark is famous. Opp. at 23. Not so. In fact, this Court has distinguished the very case upon which Epic Tech relies, *WEC Holdings, LLC v. Juarez*, 2008 WL 345792 (D. Nev. Feb. 5, 2008). As the Court explained, *WEC* "was decided before

13

*Iqbal* and did not apply *Twombly*," and thus provides no help to Epic Tech here. *See Brookwood Funding*, 2015 WL 11504556, at *4 n.1 (dismissing dilution claim for failure to plead fame). Epic Tech attempts to flip the burden on SpinX to present evidence of why Epic Tech's mark is **not** famous by relying on *US Risk Ins. Grp. Inc. v. U.S. Risk Mgmt., LLC*, 2013 WL 4504754 (N.D. Tex. Aug. 20, 2013), which is inapposite. There, unlike here, the defendant argued about the extent of dilution protection afforded a mark, rather than challenging the sufficiency of the plaintiff's allegations that its mark is famous at all. Opp. at 23.

**Second**, Epic Tech mischaracterizes the pleading standard in arguing that "marks that are much less well known with smaller markets have passed the test at the motion to dismiss stage." Opp. at 24. But the authority on which Epic Tech relies is again inapposite. For example, in *Russell Road Food & Beverage, LLC v. Galam*, the plaintiff did not challenge the fame of the defendants' marks. 2014 WL 537567, at *2 (D. Nev. Feb. 7, 2014). And Epic Tech's other cases involved concrete allegations of well-pleaded facts that supported the plaintiffs' assertions of fame. *See e.g., Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 299 (E.D.N.Y. 2014) (plaintiff alleged he "worked with people throughout the United States and internationally; authored books; maintained a website and online community;" and appeared on widely syndicated television shows); *see also Coast Law Grp. v.*

*Panagiotou*, 2013 WL 12114633, at *4 (S.D. Cal. Mar. 28, 2013) (mark had appeared on newscasts, national and local newspapers and magazines, websites, blogs, and social networking platforms).

Here, Epic Tech alleges no such facts. Instead, Epic Tech ***only*** alleges that its mark is federally registered and has been used in "150 locations." FAC ¶¶ 10, 20. Epic Tech pleads no facts under the first three factors of the TDRA about its advertising, mark's publicity, sales, or mark's recognition by the general consuming public. And though Epic Tech baldly asserts that its mark is famous, "[t]he liberal pleading standard of Rule 8 does not require that the court set aside reality." *Brookwood Funding*, 2015 WL 11504556, at *4.

Epic Tech's failure to plead any facts showing that its mark is famous is fatal to its trademark dilution claim. Because amendment would be futile, the Court should dismiss Epic Tech's trademark dilution claim with prejudice.

### III. CONCLUSION

For the foregoing reasons, SpinX respectfully requests that this Court dismiss Counts II and III of Epic Tech's First Amended Complaint, with prejudice.

*Signature follows on the next page.*

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated: February 1, 2023

By: */s/ Michael R. Baumrind*
AJAY S. KRISHNAN
MICHELLE YBARRA
CHRISTOPHER SUN
DANIEL B. TWOMEY
633 Battery Street
San Francisco, CA  94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

MICHAEL R. BAUMRIND
BONDURANT, MIXON &
ELMORE LLP
3900 One Atlantic Center
1201 West Peachtree Street NW
Atlanta, GA  30309
Telephone:  404.881.4195
Facsimile:   404.881.4111

Attorneys for Defendant
SPINX GAMES LIMITED

## **CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENTS**

Pursuant to LR 7.1D, I hereby certify that the foregoing has been prepared using 14-point Times New Roman, with a 1.5 inch top margin per LR 5.1.B–D.

Dated:  February 1, 2023

/s/ *Michael R. Baumrind*
MICHAEL R. BAUMRIND
BONDURANT, MIXON & ELMORE LLP
3900 One Atlantic Center
1201 West Peachtree Street NW
Atlanta, GA  30309
Telephone:  404.881.4195
Facsimile:  404.881.4111

Attorneys for Defendant
SPINX GAMES LIMITED

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send email notifications of such filings to the following attorneys of record:

Kelly O. Wallace
Paul F. Wellborn III
Samuel A. Mullman
1218 Menlo Dr. NW., Suite E
Atlanta, Georgia 30318
kelly@wellbornlaw.com
pete@wellbornlaw.com
sam@wellbornlaw.com

/s/Michael R. Baumrind
MICHAEL R. BAUMRIND
BONDURANT, MIXON & ELMORE LLP
3900 One Atlantic Center
1201 West Peachtree Street NW
Atlanta, GA  30309
Telephone:  404.881.4195
Facsimile:   404.881.4111

Attorneys for Defendant
SPINX GAMES LIMITED